[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-10592-H

————————————————

IN RE: Frank James Welch, Jr.,

Petitioner.

————————————————

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

————————————————

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and HULL, Circuit
Judges.

BY THE PANEL:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Frank James Welch,

Jr., proceeding pro se, has filed an application seeking an order authorizing the

district court to consider a second or successive motion to vacate, set aside, or

correct his federal sentence, 28 U.S.C. § 2255.  Such authorization may be granted

only if we certify that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).  "The court of appeals may authorize the filing of a second or

successive application only if it determines that the application makes a prima

facie showing that the application satisfies the requirements of this subsection."

Id. § 2244(b)(3)(C).

In his application, Welch indicates that he seeks to raise one claim in a

second or successive § 2255 motion.  He argues that the claim relies upon a new

rule of law, citing Johnson v. United States, 576 U.S. ___, 135 S. Ct. 2551 (2015),

which the Supreme Court made retroactive in Welch v. United States, 578 U.S.

___, 136 S. Ct. 1257, 1268 (2016).  He asserts that his life sentence under the

Armed Career Criminal Act is unconstitutional in light of Johnson because two of

his prior violent felony convictions no longer support his ACCA enhanced

sentence.

The ACCA provides that a person convicted of being a felon in possession

of a firearm under 18 U.S.C. § 922(g) and who "has three previous

2

convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a fifteen-year mandatory minimum sentence. 18 U.S.C. § 924(e)(1); see also Mays v. United States, 817 F.3d 728, 730 (11th Cir. 2016). The "term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"), (2) "is burglary, arson, or extortion, [or] involves use of explosives" (the "enumerated clause"), or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

In Johnson, the Supreme Court held that the ACCA's residual clause is unconstitutionally vague. 135 S. Ct. at 2557–58, 2563. But the Court made clear that its decision did "not call into question application of" the ACCA's elements clause or the enumerated clause. Id. at 2563. The Supreme Court later held that Johnson's invalidation of the residual clause is a new substantive rule that applies retroactively to cases on collateral review. Welch, 136 S. Ct. at 1268. Because of Johnson and Welch, federal prisoners may "seek to make a prima facie claim that they previously were sentenced, at least in part, in reliance on the ACCA's now-voided residual clause and that therefore they fall within the new substantive rule in Johnson." In re Hires, 825 F.3d 1297, 1299 (11th Cir. 2016). To establish that

3

prima facie claim, applicants must demonstrate a "reasonable likelihood" that they will benefit from the new, retroactive constitutional rule.  In re Holladay, 331 F.3d 1169, 1173 (11th Cir. 2003).  But federal prisoners "who were sentenced under the elements or enumerated clauses, without regard to the residual clause at all, of course, do not fall within the new substantive rule in Johnson and thus do not make a prima facie claim involving this new rule."  In re Hires, 825 F.3d at 1299.

## I.    FACTS AND PROCEDURAL HISTORY

### A. Facts

On January 17, 1995, Bobby Earl Austin dropped his mother off at the public library and then proceeded to a car wash in Prichard, Alabama.  His two-year-old son, Kendall Jamar Sergeant, was in the back seat of the car.  Austin, a construction worker, had just gotten paid for work on a concrete project and had $1000 in cash in his glove compartment.  When he opened his glove compartment to get some money to pay for his car wash, several people saw the cash.  Those people included Welch and another man named Dwayne Hill.

After paying for his car wash, Austin drove across the street to a convenience store and got out to use a payphone.  As he was using the payphone, he saw Hill drive up to the convenience store.  An individual, later identified as Welch, got out of Hill's car, approached Austin, put a gun at Austin's side, and stated, "get into the car or I'll shoot you."  Austin tried to grab the gun from

4

Welch.  The two struggled and Welch said "I'll kill you man!"  A shot was fired, which did not strike Austin, but a second shot hit him in the thigh and exited through his buttocks.  Austin managed to break free and tried to get his son from his car, but Welch entered the driver's side as Austin yelled "don't take my baby." Welch sped away from the scene with Austin's son still in the car.

Austin's car was later recovered near the convenience store (the money in the glove compartment was gone) and his son was found wandering the streets. Austin's son was physically unharmed, but Austin suffered permanent injury from his gunshot wound, which ultimately resulted in his castration.

As a result of that robbery, Welch became a wanted man.  He was on parole supervision for previous violent felony convictions and knew the police were looking for him, so he stayed at his girlfriend's house.  The police caught up with him on July 14, 1995.  That day, Mobile County District Attorney Investigator Joe Goff was trying to serve a warrant in an unrelated case.  Goff knocked on the door of Welch's girlfriend's house, not knowing Welch was inside.  Thinking that Welch was the suspect he was looking for, Goff asked Welch for his identification. Instead of producing his identification, Welch produced a semi-automatic handgun and opened fire on Goff.  Welch fired at least seven rounds at Goff and Goff returned fire, but neither man was hurt.  Welch fled and was later arrested.

5

After Welch's arrest, police recovered a bag belonging to him that contained several stolen firearms. Police also seized various pieces of gold jewelry identified as proceeds from a jewelry store robbery in Gulfport, Mississippi, on July 12, 1995. Welch also confessed that he shot Austin.

## B. Welch's Guilty Pleas

A federal grand jury indicted Welch in two separate cases. In the first case, he was charged with (1) conspiracy to commit carjacking, in violation of 18 U.S.C. § 371, (2) carjacking, in violation of 18 U.S.C. § 2119, (3) using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), and (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). In the second case, Welch was charged with (1) possession of stolen firearms, in violation of 18 U.S.C. § 922(j), and (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Welch pleaded guilty to all six counts without a plea agreement.

The presentence investigation report calculated a total offense level of 31 and a criminal history category of VI. Welch's guidelines range in each case was 188 to 235 months, and he was also subject to a 60-month mandatory minimum for the § 924(c) conviction in the first case. His guidelines range reflected a fifteen-year ACCA enhancement for the § 922(g) convictions, which was based on three prior Alabama violent felony convictions. The first prior conviction was for first degree robbery; Welch, armed with a gun, robbed another man of a pistol and

6

watch.  The other two were for first degree assault.  For both of those convictions, Welch seriously injured another person with a gun.  All three of those prior convictions occurred on separate occasions.  See 18 U.S.C. § 924(e)(1) (stating that the ACCA qualifying offenses must be "committed on occasions different from one another").

Along with those three violent felony convictions, the PSR reflected Welch's extensive criminal history dating back to 1985 when he was eighteen years old.  That history included Alabama convictions for third degree assault, third degree criminal mischief, second degree receipt of stolen property, carrying a pistol without a permit, and possession of marijuana for personal use.  Welch had also been arrested and charged with numerous other offenses, including reckless endangerment, theft of property, third degree burglary, harassment, attempted robbery, second degree assault, and criminal trespassing.  Finally, when he pleaded guilty to the six counts in the carjacking and stolen firearms cases, he also faced fifteen pending counts of first degree robbery and attempted murder in Alabama state court and a pending indictment in Mississippi state court for armed robbery of the jewelry store (which he had confessed to).

## C. The Sentence Hearing

At the sentence hearing in January 1996, the district court first asked if there were any objections to the PSR.  The government and Welch stated that they had

7

no objections.  As a result, the court adopted the PSR's factfindings.  Welch also stated that his guidelines range was properly calculated, and he did not object to the ACCA enhancement.

In the first case, the court departed upward from 188 to 235 months to 292 to 365 months.[1]  It then ruled that another increase to 360 months to life was appropriate based on Welch's extensive and serious criminal history.  The court stated that in over seven years, Welch appeared "to be a defendant with as violent [a] criminal propensity" as it had "ever seen" and that he had "demonstrated to a degree that [it had never] seen before an absolute failure to appreciate or recognize or give any respect to human life, other than his own."  The court sentenced Welch to 60 months on the conspiracy count, 300 months on the carjacking count, and life on the ACCA enhanced felon-in-possession count, all running concurrently, and he also received the mandatory consecutive 60-month sentence on the § 924(c) count. Welch objected to the life sentence.

As for the second case, the court also found that the 188 to 235 month sentence was inadequate and departed upward to 292 to 365 months.  It sentenced Welch to 293 months on the felon-in-possession count and 120 months on the stolen firearms count.  Both of those sentences ran concurrently to each other and

---

[1] That upward departure was based on the PSR's statement that Welch's § 924(c) conviction, which was dealt with separately, negated an enhancement that he would have received because his gun was discharged during the carjacking.  The court departed upward so that Welch's guidelines range did not under-represent his offense.

to the sentences in the first case.  The court asked for any additional objections, and there were none.

### D. Welch's Direct Appeal and Post-Conviction Motions

Welch appealed his sentence, contending that the district court's upward departure to life was improper and that his sentence was unreasonable.  We affirmed his sentence in an unpublished decision.  See United States v. Welch, 111 F.3d 897 (11th Cir. 1997).

The district court record reflects that Welch filed his first § 2255 motion in August 1996, which the court denied in April 1997.  Welch filed another § 2255 motion in February 1999, which the court denied the next month.  It also denied his motion for a certificate of appealability on the ground that he had failed to make a substantial showing of the denial of a constitutional right.[2]

Welch submitted this application for leave to file a second or successive § 2255 motion in December 2017, though it was not filed with this Court until February 15, 2018.[3]  In his application, he seeks relief based on the Johnson rule

---

[2] Welch also challenged his carjacking conviction in a 28 U.S.C. § 2241 petition for a writ of habeas corpus, which he filed in 2013 in the United States District Court for the Eastern District of Kentucky when he was incarcerated in Kentucky.  Welch v. Holland, No. 13-76-DLB, 2013 WL 5676301, at *1 (E.D. Ky. Oct. 17, 2013) (unpublished).  That court denied his petition on the merits.  Id.

[3] The Supreme Court decided Johnson on June 26, 2015, which means that the limitations period for filing second or successive motions ended a year later, on June 26, 2016.  See 28 U.S.C. § 2255(f)(3); Dodd v. United States, 545 U.S. 353, 359–60, 125 S. Ct. 2478, 2483 (2005).  Although Welch's application is dated December 29, 2017, he attached several documents indicating that he allegedly tried to file it in November 2015, but that it was lost because of

from his ACCA enhanced life sentence on his felon-in-possession conviction in the carjacking case.  He states that "two of [his] prior convictions were for assault under Alabama law which fit the exact concerns raised by the [Supreme Court] in Johnson."  He also asserts in passing that his prior Alabama conviction for first degree robbery is not a qualifying offense under the ACCA.

## II.     DISCUSSION

To succeed on his application, Welch must "demonstrate a reasonable likelihood" that he will benefit from Johnson, which requires him to show that he was "sentenced, at least in part, under the residual clause."  In re Hires, 825 F.3d at 1299 (quotation marks omitted).  But if his three prior convictions qualify under the elements clause without regard to the residual clause, he cannot make the required prima facie showing.[4]  Id. at 1303–04.

To begin with, his prior conviction for Alabama first degree robbery qualifies as a predicate offense under the elements clause because it requires force with the intent to overcome physical resistance.  See Ala. Code §§ 13A-8-41(a)(1), -43(a)(1) (providing that a person commits first degree robbery if in the "course of committing a theft he . . . [u]ses force against the person of the

prison mail problems.  In any event, we do not consider the timeliness of a second or successive motion in deciding whether an applicant has permission to file that motion.  See In re Jackson, 826 F.3d 1343, 1347 (11th Cir. 2016).

[4] The enumerated clause is off the table because Welch's convictions do not involve burglary, arson, extortion, or the use of explosives.  See 18 U.S.C. § 924(e)(2)(B)(ii).

owner . . . with intent to overcome his physical resistance or physical power of resistance" and is "armed with a deadly weapon or dangerous instrument" or "[c]auses serious physical injury to another"); see also United States v. Fritts, 841 F.3d 937, 941–42 (11th Cir. 2016) (concluding that a conviction under Florida's armed robbery statute qualifies as a violent felony under the ACCA's elements clause because the statute requires the "use or threatened use of physical force") (quotation marks omitted).  That leaves the issue of whether his Alabama convictions for first degree assault qualify as predicate ACCA convictions under the elements clause.  They do.

> A person commits first degree assault in Alabama if:
>
> (1) With intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument; or
>
> (2) With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such an injury to any person; or
>
> (3) Under circumstances manifesting extreme indifference to the value of human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person; or
>
> (4) In the course of and in furtherance of the commission or attempted commission of arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life, or of immediate flight therefrom, he causes a serious physical injury to another person; or

11

> (5) While driving under the influence of alcohol or a controlled substance or any combination thereof in violation of Section 32-5A-191 he causes serious bodily injury to the person of another with a motor vehicle.

Ala. Code § 13A-6-20(a) (1987).  Welch asserts that the statute "includes conduct which does not meet the ACCA definition of a crime of violence under the now defunct residual clause," and that because the record does not indicate which provision of the assault statute he was convicted under, there is no way to tell whether his convictions can serve as ACCA predicate offenses.  His argument fails.

Welch acknowledges that Alabama's first degree assault statute is divisible because it "lists multiple offenses."  United States v. Davis, 875 F.3d 592, 597 (11th Cir. 2017).  And because the statute is divisible, we apply the "modified categorical approach [ ] to determine which crime in the statute formed the basis of [his] conviction[s]."  Id. (quotation marks omitted).  "Under the modified categorical approach, we can look at certain judicial records," including the indictment, plea colloquy, and the undisputed facts in the PSR, "in order to determine which of the multiple crimes listed in the statute the defendant was convicted of committing."  Id.; see also United States v. McCloud, 818 F.3d 591, 595 (11th Cir. 2016).  If we can determine "which statutory phrase the defendant was necessarily convicted under," we then consider whether the "least of the acts

12

criminalized by that statutory phrase . . . includes the use, attempted use, or threatened use of physical force against another person, as required by the ACCA's elements clause." Davis, 875 F.3d at 598 (quotation marks omitted).

Because we apply the modified categorical approach to Alabama's first degree assault statute, we can look at Welch's state court indictments, the plea colloquy from his 1996 guilty plea in the carjacking and stolen firearms cases, and the PSR's undisputed factfindings to determine which statutory subsection he was convicted under. The indictment for his first assault conviction in 1987 charged that Welch "did with the intent to cause serious physical injury to Irstine Goodwin, cause serious physical injury to Irstine [Goodwin], by means of a deadly weapon or dangerous instrument, to-wit:  a gun, in violation of § 13A-6-20." And for his second assault conviction, in 1990, the indictment charged that he "did with the intent to cause serious physical injury to Kendall Pettaway, cause serious physical injury to Kendall Pettaway, by means of a deadly weapon or dangerous instrument, to-wit:  by shooting him with a gun, in violation of § 13A-6-20." The plea colloquy and PSR show that Welch was convicted of both of those offenses.

Those records establish that Welch was convicted under Ala. Code § 13A-6-20(a)(1), which states that a "person commits the crime of assault in the first degree if [w]ith [the] intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a

13

dangerous instrument."[5]  We next determine "whether the least of the acts criminalized [by that provision] . . . includes the use, attempted use, or threatened use of physical force against another person, as required by the ACCA's elements clause."  Davis, 875 F.3d at 598.

It does.  Under § 13A-6-20(a)(1), the "serious physical injury" element requires the use of physical force, because without such force there can be no serious physical injury.  See Johnson v. United States, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271 (2010) ("We think it clear that in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force — that is, force capable of causing physical pain or injury to another person.").

Welch has three prior qualifying ACCA convictions that survive Johnson's invalidation of the residual clause, which means that his application does not make a prima facie showing that he is entitled to relief under Johnson.[6]  See In re Hires,

---

[5] Because the indictments specify that Welch intentionally caused serious physical injury to his victims, he could not have been convicted under § 13A-6-20(a)(3), which forbids "recklessly engag[ing] in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person."  See United States v. Palomino Garcia, 606 F.3d 1317, 1336–37 (11th Cir. 2010) (concluding that a "conviction predicated on a mens rea of recklessness does not satisfy the 'use of physical force' requirement under" the guidelines).

[6] Welch also cites the Supreme Court's decision in Descamps v. United States, which held that the modified categorical approach applies only to divisible statutes.  570 U.S. 254, 278, 133 S. Ct. 2276, 2293 (2013).  It is unclear from his application if he attempts to rely on Descamps to support his claim that he is entitled to file a second or successive motion, but any such argument would fail because "Descamps cannot serve as a basis, independent or otherwise, for authorizing a second or successive § 2255 motion."  In re Hires, 825 F.3d at 1303.

14

825 F.3d at 1303–04.  Accordingly, his application for leave to file a second or successive § 2255 motion is **DENIED.**

15